UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

YASH RAJ FILMS (USA) INC.,

                           Plaintiff,

     -against-

DISHANT.COM LLC; DISHANT G. SHAH;
MEETA SHAH; and JOHN DOES 1-20,

                         Defendants.

-------------------------------------------------------------------x

MEMORANDUM AND ORDER

08-CV-2715 (ENV) (RML)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 1 5 2009

P.M.
TIME A.M. _____

VITALIANO, D.J.

    Defendants Dishant G. Shah and Meeta Shah, who are married, own and operate a freely

accessible website that functions as a virtual library of South Asian Indian pop music and

culture. Plaintiff Yash Raj Films (USA) Inc. ("Yash Raj"), a company that produces and

markets Indian music and movies in North America, complains that the Shahs have made

unauthorized copies of Yash Raj media products and distributed and sold them via their website,

and asserts claims of copyright and trademark infringement in violation of federal law. The

Shahs, proceeding pro se, now move to dismiss plaintiff's complaint for lack of personal

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)(4). Plaintiff opposes dismissal,

contending that this Court has jurisdiction over defendants pursuant to New York's "long-arm"

statute. For the reasons set forth below, the motion to dismiss is granted.

### BACKGROUND

    The following facts are drawn from the complaint, motion papers and annexed exhibits

submitted by the parties, and are construed in the light most favorable to plaintiff. See Yellow

Pages Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5563, 2001 WL 1469168, at *1



(S.D.N.Y. Nov. 19, 2001) (citing Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).[1]

Plaintiff, a New York corporation with its principal place of business located within the Eastern District of New York and owner of exclusive copyrights in and to many Indian-language films, musical compositions and sound recordings, is in the business of distributing and selling its copyrighted media products in the United States and elsewhere for public performance, in home entertainment formats and over the internet. Plaintiff uses certain trademarked "Y" logos in connection with its media products.

Defendant Dishant.com, LLC is a limited liability company formed under the laws of Virginia, with a principal place of business in Richmond, Virginia.[2] Through its principals, Dishant and Meeta Shah, Dishant.com, LLC operates the website www.dishant.com, which provides access to digitized versions of Indian songs, movies and images that users may "stream" and listen to free of charge while on the site; users are also able to create personalized song playlists and email media links to third parties. Additionally, Indian songs in the form of musical cell phone "ringtones" are available for download from defendants' website for a fee (as distinguished from the remainder of the site's content, which is only accessible to users on a temporary basis while they "stream" it). The cost, according to the report of plaintiff's investigator, is $2.00 per ringtone. See Poppe Decl. Ex. U. To access www.dishant.com, a visitor must first register and provide information including name, email address and gender. Credit card information and a cell phone number are required for ringtone purchase.

---

[1] A motion to dismiss a claim for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is "inherently a matter requiring the resolution of factual issues outside of the pleadings," and accordingly "all pertinent documentation submitted by the parties may be considered in deciding the motion." Yellow Pages Solutions, Inc., 2001 WL 1469168, at *1.

[2] The parties appear to view Dishant.com LLC and the Shahs as essentially interchangeable – indeed, plaintiff expressly avers that the individuals and the company are alter egos. Accordingly, although the instant motion to dismiss was made solely by Dishant and Meeta Shah proceeding pro se, the parties uniformly treat the motion as if it were also brought by Dishant.com, LLC, and the Court follows suit. See Royalty Network, Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 414 n.3 (S.D.N.Y. 2009).

Dishant Shah, the sole owner of Dishant.com, LLC, personally conceived of and created www.dishant.com in 1995 while he was a student at Yale University in Connecticut, and his wife, Meeta Shah, currently oversees its day-to-day operations. To that end, Mrs. Shah employs approximately 10 people in India, "working on the Web site, digitizing the songs, writing the lyrics and posting them on the site." Poppe Decl. Ex. C. [3]

Yash Raj alleges that the Shahs have a "substantial financial interest" in their website's operations, but makes no attempt to quantify that interest, and does not claim that the website is their livelihood or even a primary source of income. Defendants do not dispute that they profit directly from the sale of ringtones and, in addition, earn money from third parties who pay to display banner advertisements on the website. However, they claim that the revenue generated by the website is not "substantial" and, essentially, that it just covers their expenses. In fact, Dishant Shah is a radiologist by profession, and he has characterized Dishant.com as a "hobby" and "not a profitable venture." Poppe Decl. Ex. B, C.

Plaintiff presents data indicating that www.dishant.com draws approximately 73,000 user visits ("hits") per month in the United States, but is silent as to how many of those 73,000 hits are from New York specifically, or how many more hits the site receives from users outside the United States. Defendants supply some context with the statement – which Yash Raj does not attempt to refute – that "New York visitor traffic [on www.dishant.com] is negligible with respect to visitors in India." Mot. at 2. Further, according to a news article submitted by plaintiff in opposition to the motion, the website attracts a total of approximately 2 million hits per month worldwide. Nonetheless, Yash Raj asserts conclusorily that the website is "national in scope" and "focused on the areas of the U.S. where there are the highest concentrations of Indian

---

[3] In addition to the Shahs and Dishant.com, LLC, the complaint names John Does 1 through 20 as defendants, and avers on information and belief that additional individuals are liable to plaintiff as a result of their participation in the allegedly infringing acts.

3

and South Asians including the State of New York," and observes: "the State of New York has the second largest Asian Indian population in the United States and the New York tri-state area (New York, New Jersey and Connecticut) accounts for approximately 25% of all Asian Indians living in the United States." Opp. Mem. at 6-7.

In the complaint, plaintiff alleges that (a) defendants have, without authorization, created infringing copies of musical composition and audio sound recordings for which plaintiff owns the copyrights and/or exclusive rights under copyright, (b) the copies defendants created infringe plaintiff's registered "Y" logo, artwork and audio and film titles, and (c) defendants have made those unauthorized copies available to the public free of charge on www.dishant.com. Additionally, plaintiff claims that defendants have converted certain of its copyrighted songs to ringtones and profited from selling them on the website. In April 2008, Yash Raj notified defendants of their alleged infringement, and, three months later, commenced the instant litigation. Plaintiff's complaint contains four counts: direct, contributory and vicarious copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq., and trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 et seq. Defendants filed the instant motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court lacks personal jurisdiction over them.

## DISCUSSION

### A. Standard for Motion to Dismiss

On a motion to dismiss a complaint for lack of personal jurisdiction made pursuant to Rule 12(b)(2), it is the plaintiff's burden to establish the Court's jurisdiction over the defendants. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999);

4

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Where, as here, the challenge to jurisdiction is made before the parties have had an opportunity to conduct discovery, a plaintiff need only make a prima facie showing that jurisdiction exists, and meets its burden by pleading good faith allegations that, if proven, would be sufficient to establish jurisdiction. See Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 356-57 (S.D.N.Y. 2009); Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), aff'd 126 F.3d 25 (2d Cir. 1997). At this stage of the inquiry, the Court will construe the pleadings and any other relevant materials it considers in the light most favorable to Yash Raj, resolving all ambiguities in its favor. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the Court "will not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992)), and is "not bound to accept as true a legal conclusion couched as a factual allegation." Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986)).

## B. Personal Jurisdiction Under New York Law

In a federal question case, the Court applies the personal jurisdiction rules of the forum state, unless the applicable statute specifically permits nationwide service of process. PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Neither of the pertinent federal statutes, the Copyright Act and the Lanham Act, provides for nationwide service. See Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196, (2d Cir. 2000) (Copyright Act); PDK Labs, 103 F.3d at 1108 (Lanham Act). Consequently, New York law is determinative of whether jurisdiction over non-domiciliary defendants is present here. See Bensusan, 126 F.3d at 27. If jurisdiction is

sustainable under New York law, the Court will then decide "whether asserting jurisdiction under that [law] would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution," <u>Best Van Lines v. Walker</u>, 490 F.3d 239, 244 (2d Cir. 2007); <u>see</u> <u>Bensusan</u>, 126 F.3d at 27, pursuant to which a defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

Yash Raj does not attempt to show that defendants' "contacts with New York are so continuous and systematic that [they are] subject to the jurisdiction of courts in New York on a general jurisdiction theory." <u>Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC</u>, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). Given that defendants state without dispute that they have no office, real estate or employee in the State of New York, Yash Raj argues instead that the Court may exercise jurisdiction over defendants on three separate and independent grounds set forth in New York's "long-arm statute," N.Y. C.P.L.R. § 302.

1. <u>C.P.L.R. § 302(a)(1): Transaction of Business in New York</u>

Under C.P.L.R. § 302(a)(1), a New York court has personal jurisdiction over an out-of-state defendant that "transacts any business within the state" if the cause of action "arises from" such business transactions. In other words, there must be a "direct relationship between the cause of action and the in-state conduct." <u>Fort Knox Music</u>, 203 F.3d at 196. The "transacting business" test "requires only a minimal quantity of activity, provided that it is of the right nature and quality." <u>Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996). Indeed, a single transaction may suffice for personal jurisdiction under § 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. <u>See</u>

Bank Brussels Lambert, 171 F.3d at 787. "The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 385, 881 N.E.2d 830, 834 (2007) (internal quotations omitted) (emphasis added). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Fischbarg v. Doucet, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (2007) (internal quotations omitted), as opposed to "random, fortuitous, or attenuated contacts . . . [or] unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (internal quotations omitted).

Although § 302(a)(1) "is typically invoked in breach of contract cases," it may support personal jurisdiction over a defendant in an action that sounds "in tort when supported by a sufficient showing of facts." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004) (internal citations omitted). Of course, the infringement of a copyright or trademark in violation of federal law is a tort. See PPX Enter., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 124-25 (2d Cir. 1984) (trademark); Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir. 1972) (copyright).

In the instant case, Yash Raj's theory is that the availability and accessing of defendants' website within New York constitutes transacting business for purposes of this section of the long-arm statute. Opp. Mem. at 12-13. Specifically, plaintiff notes that, by accessing www.dishant.com, users in New York can purchase unauthorized ringtone versions of plaintiff's copyrighted songs, and contends that a "business that uses its website to make sales to

7

customers, even in a distant state, becomes subject to the jurisdiction of that state's court." Opp. Mem. at 14 (citing Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000); Nat'l Football League v. Miller, No. 99 Civ. 11846, 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30, 2000)). Although tabbing facts that must be considered, plaintiff's characterization of the applicable law is a sweeping overstatement. Because websites are "generally speaking, equally accessible everywhere" in the developed world, Capitol Records, 611 F. Supp. 2d at 358, the mere availability of a site to a putative customer in New York does not automatically constitute the "purposeful availment" required for a "transaction of business" in this state – rather, "[t]he guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." Citigroup, 97 F. Supp. 2d at 565.

To frame the jurisdictional inquiry in the internet context, courts "have identified a spectrum of cases . . . At one end are cases where the defendant makes information available on what is essentially a 'passive' web site, . . . [which] does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." Id. "With respect to the 'middle ground' of interactive web sites, courts distinguish between those with significant commercial elements, which typically are found to constitute transaction of business, and those lacking significant

8

commercial elements, which typically are not." Rescuecom Corp. v. Hyams, 477 F. Supp. 2d 522, 529 (N.D.N.Y. 2006) (collecting cases).

In a recent case brought in the Southern District of New York involving the same defendants and nearly identical facts, defendants won dismissal of a New York-based Indian music company's copyright and trademark infringement claims for want of personal jurisdiction over defendants in New York. See Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410 (S.D.N.Y. 2009). In Royalty, as here, the plaintiff sought to invoke § 302(a)(1). After examining the specific activities and characteristics of www.dishant.com, the court found that the site fell in the middle ground of the spectrum of interactivity, because "the site allows, indeed invites, a level of interactivity that extends well beyond merely making information available to listeners" – e.g., users register, create and save playlists and download ringtones – but defendants do "not conduct traditional business over the internet because [they] neither sell[ ] goods or services through [their] website nor charge[ ] membership fees to [the site's] registered users." 638 F. Supp. 2d at 419 (citation and internal quotations omitted) (emphasis in original).[4] As a result, the Royalty court undertook a "closer evaluation of [the website's] contact with New York residents," and ultimately held that the plaintiff had failed to demonstrate that defendants had transacted business in New York for § 302(a)(1) purposes. Id. The court found it unnecessary to even reach the question of whether allowing New York residents to purchase and download ringtones rises to the level of transacting business, because the plaintiff there had

---

[4] In contrast, both of the cases that Yash Raj cites as authority for the proposition that defendants' website activities give rise to personal jurisdiction involved websites that were, at heart, internet activities of commercial business ventures. See Citigroup, 97 F. Supp. 2d at 565 (website allowed customers to apply for loans over the internet and chat with defendants' online representative; court found interaction was "both significant and unqualifiedly commercial in nature"); NFL, 2000 WL 335566, at *1 (defendant used plaintiff's trademark to attract visitors to his sporting news website and generated substantial income from selling advertising space on the site to, among others, "electronic bookies"). Additionally, in both, the plaintiff established further specific connections to the state. See Citigroup (defendants also directly solicited New York clients through the mail and hired New York companies to record mortgages); NFL (two teams in plaintiff's professional football league, the New York Giants and the New York Jets, are expressly identified as New York-based).

provided "no evidence that any New York resident actually engaged in any such transactions" – with the exception of plaintiff's attorneys or agents, whose 'manufactured contacts' would still not be a legitimate basis for jurisdiction – "or that defendants did anything to indicate their knowing and purposeful transaction with New York." Id. at 419-20. Precisely the same facts are present here.

Yash Raj, just like the plaintiff in Royalty, seeks refuge in the argument that, since www.dishant.com is designed to attract an Indian audience and a significant percentage of the Indian population within the United States is located in New York, defendants must have anticipated that some New Yorkers would use their website to download ringtones and, ergo, defendants purposefully availed themselves of the benefits of the New York market. The Royalty court found, and this Court agrees, that this "is simply insufficient. Even assuming those facts could support an inference that transactions with New York residents occurred, they would nonetheless be insufficient to support the further, necessary finding that defendants purposefully and knowingly entered into those transactions with New York residents or otherwise targeted New York for business" in light of the undisputed fact that "the website's primary audience is not site visitors "from America at all but, instead, residents of India." Id. at 420; see also Capitol Records, 611 F. Supp. 2d at 359 (holding that availability of infringing files on defendants' website was not 'transacting business' in New York in part because the files "were equally available to all other [website] users regardless of their location"). Put simply, "[i]t stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state" – in the same way it can reach them everywhere else on Planet Earth – "without some evidence or allegation that commercial activity in that state

10

actually occurred or was actively sought." Freeplay Music, Inc. v. Cox Radio, Inc., No. 04 Civ. 5238GEL, 2005 WL 1500896, at *7 (S.D.N.Y. June 23, 2005).

While Yash Raj does not expressly premise its § 302(a)(1) argument on anything other than defendants' sale of ringtones, it states elsewhere in its opposition papers that (1) defendants registered their website's domain name through Register.com. LLC, a company which maintains its principal offices in New York, (2) among the advertisers on defendants' website are New York-based companies such as AIG Insurance and other major national companies that do business in New York, and (3) defendants are required, but have neglected, to obtain licenses for "streaming" music over the internet from two performing rights societies, the American Society of Composers, Authors and Publishers ("ASCAP") and Broadcast Music Inc. ("BMI"), both of which maintain their principal offices in New York. To the extent plaintiff implies that these allegations support a finding of "transacting business" in New York, it strays well off base. The first two were expressly and correctly rejected as jurisdictional grounds by the court in Royalty because they were irrelevant (the third is as well) to the facts and legal issues underlying the infringement claims. See 638 F. Supp. 2d at 421-23. Nothing in the record outlined by the court in Royalty or provided by Yash Raj here indicates that defendants had targeted New York-based advertisers or touted their ability to reach the New York market. Similarly, as to defendants' alleged failure to obtain required licenses from ASCAP and BMI (which happen to be headquartered in New York), the Court finds such a highly attenuated, ministerial connection to New York as this to be utterly lacking in terms of the indicia of purposeful availment necessary to obtain jurisdiction under § 302(a)(1), much less the Fourteenth Amendment. Even if defendants had in fact acquired the licenses which plaintiff claims they were obligated to get,

11

those licenses would have been applicable to a multitude of jurisdictions, and would not have had any special or specific connection to transacting business in New York.

## 2. C.P.L.R. § 302(a)(2): Tortious Conduct in New York

Alternatively, Yash Raj contends that long-arm jurisdiction is available pursuant to C.P.L.R. § 302(a)(2), which extends to any person or agent who "commits a tortious act within the state." Plaintiff argues that defendants have committed and are responsible for tortious acts of copyright infringement "within" New York, and that because plaintiff's claims arise from those alleged acts, no minimum threshold of activity is required. The pivotal element in this line of reasoning, obviously, is Yash Raj's contention that the allegedly infringing activity took place "within" New York for purposes of § 302(a)(2) jurisdiction. All that is lacking is an allegation of facts to support the argument.

For nearly half a century, the New York Court of Appeals has interpreted § 302(a)(2) to reach only tortious acts performed by a defendant while physically present in the state. See Feathers v. McLucas, 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, 459 209 N.E.2d 68, 77 (1965); Platt Corp. v. Platt, 17 N .Y.2d 234, 237, 270 N.Y.S.2d 408, 410, 217 N.E.2d 134, 135 (1966). In Bensusan, the Second Circuit embraced the construction of § 302(a)(2) set forth in Feathers and Platt, and specifically applied it in the internet context. See 126 F.3d at 28. The New York plaintiff in Bensusan alleged that the out-of-state defendant had displayed an infringing trademark on a website; concluding that the tort of infringement was committed where the defendant's website was created and/or maintained, the Second Circuit rejected the plaintiff's argument for jurisdiction under § 302(a)(2) . The Court emphasized in Bensusan that the physical presence requirement is a hard and fast one, noting: "[t]he official Practice Commentary to C.P.L.R. § 302 explains that 'if a New Jersey domiciliary were to lob a bazooka shell across

12

the Hudson River at Grant's tomb, <u>Feathers</u> would appear to bar the New York courts from

asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New

York plaintiff.'" <u>Id.</u> (<u>citing</u> C.P.L.R. Practice Commentary 302:17).

In this case, Yash Raj has not alleged that defendants were physically present in New

York while committing the allegedly infringing acts. To the contrary, plaintiff concedes that any

and all infringing acts were committed through defendants' website, and makes no showing

whatsoever that the site was physically created and/or maintained in New York. Yash Raj

simply hangs its hat on the argument that the offer of the sale of an infringing product to a New

Yorker is a tort committed in New York, even if no actual sale is ever completed.

Not surprisingly, given this theory, Yash Raj makes no attempt to grapple with <u>Bensusan</u>.

Tellingly, almost every case it cites to support the applicability of § 302(a)(2) to defendants'

activities pre-dates <u>Bensusan</u> and, more importantly, <u>all</u> of those cases are distinguishable

because they involved physical, not merely virtual, connections between the alleged

infringement and New York.  <u>See</u> <u>Blue Ribbon Pet Prods. Inc. v. Rolf C. Hagen</u>, 66 F. Supp. 2d

454, 460 (E.D.N.Y. 1999) (personal jurisdiction over Canadian defendant that allegedly

contributed to or induced another defendant's distribution of catalogs advertising infringing

aquarium ornaments in New York); <u>Editorial Latino Americans, S.A. v. Mar Int'l Records, Inc.,</u>

829 F. Supp. 62, 64 (S.D.N.Y. 1983) (personal jurisdiction over California-based phonographic

record manufacturer that allegedly offered infringing records for sale in New York through

independent brokers acting as manufacturer's agent); <u>Dave Guardala Mouthpieces, Inc. v. Sugal</u>

<u>Mouthpieces, Inc.</u>, 779 F. Supp. 335, 337 (S.D.N.Y. 1991) (personal jurisdiction over Rhode

Island-based saxophone mouthpiece manufacturer that allegedly solicited purchases of infringing

products in New York by telephone, by direct mail and by advertising in national music

13

publications); <u>Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.</u>, 88 F.R.D. 172, 173 (E.D.N.Y. 1980) (personal jurisdiction over New Hampshire-based manufacturer that regularly sold allegedly infringing products to consumers in New York through wholesaler agents).

Bensusan's root now runs deep. In accord with its central principle, numerous courts have declined to view the advent of the internet as a means to drastically expand the applicability of § 302(a)(2), and instead have adhered to the view that in the case of websites displaying infringing marks the tort is deemed to be committed where the website is created and/or maintained. See, e.g. ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 89-90 (E.D.N.Y. 2006) (stating that any tort arising from the use of plaintiff's mark on defendant's website was committed in the state where the website's server was located, because "[t]o hold otherwise would create nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet website") (citations and internal quotations omitted) (parenthetical in original); Telebyte, Inc. v. Kendaco, Inc., 105 F. Supp. 2d 131, 134 (E.D.N.Y. 2000) (same).

The Court notes that there is some contemporary authority for the proposition that jurisdiction under § 302(a)(2) may be available where the out-of-state defendant uses the allegedly infringing mark in connection with <u>commercial internet activity</u> in New York, rather than merely displaying it on the internet as in <u>Bensusan</u>. See <u>Citigroup</u>, 97 F. Supp. 2d at 567 (applying § 302(a)(2) based on plaintiff's direct mailings to New York residents and observing in <u>dicta</u> that, while the mere existence of the website did not suffice for jurisdiction, defendants' activities on the site provided an alternate basis "to the extent that such chats [with potential customers] involve the transmission of messages that contain allegedly infringing marks to New York residents"); <u>see also</u> <u>Zippo Mfg. Co. v. Zippo Dot Com</u>, 952 F. Supp. 1119, 1126-27 (W.D. Pa. 1997); <u>see generally</u> <u>Friars Nat. Ass'n v. 9900 Santa Monica, Inc.</u>, No. 04 Civ. 4520, 2005

WL 1026553, at *5-*7 (S.D.N.Y. May 2, 2005). Yet these decisions are better understood as variants of § 302(a)(1) rather than (a)(2) jurisdictional grounds. Here, the Court has already concluded that Yash Raj has not made a prima facie showing that defendants "transacted business" in New York within the broadest meaning of § 302(a)(1). In any event, assuming these cases correctly held that such additional nonphysical or virtual activity in New York can support (a)(2) jurisdiction, there is no allegation, much less record evidence, of such additional activity here. Essentially the same absence of fact allegations that doomed Yash Raj's argument under (a)(1) is fatal to any limited virtual activity exception that might otherwise exist under (a)(2).

3. C.P.L.R. § 302(a)(3): Out-of-State Tortious Conduct Causing Injury in New York

Finally, plaintiff attempts to establish a valid basis for personal jurisdiction by citing C.P.L.R. § 302(a)(3), which, in relevant part, provides for jurisdiction over a nondomiciliary defendant which commits a tortious act outside of New York "causing injury to person or property within the state," if the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Thus, to successfully invoke § 302(a)(3), Yash Raj must allege facts sufficient to demonstrate five elements: (1) defendants committed a tortious act outside New York, (2) plaintiff's claims arise from that act, (3) the act caused injury to a person or property within New York, (4) the consequences of the act in New York were reasonably foreseeable, and (5) defendants derive substantial revenue from interstate or international commerce. See LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307, 735 N.E.2d 883, 886 (2000). Each element of this test is "essential," and if plaintiff fails to proffer sufficient evidence for any

element, "it is dispositive of the issue" of personal jurisdiction under this provision. Trafalgar Capital Corp. v. Oil Producers Equipment Corp., 555 F. Supp. 305, 310 (S.D.N.Y. 1983) (abrogated on other grounds).

Plaintiff has adequately pled the first element by alleging that defendants committed tortious acts outside the state when they uploaded infringing copies of media files for which Yash Raj holds the copyright and/or trademark rights. As noted supra, copyright infringement and trademark infringement are torts. See PPX Enter., Inc., 746 F.2d at 124-25 (trademark); Screen Gems-Columbia Music, Inc., 453 F.2d at 554 (copyright). The second element is also satisfied, as plaintiff asserts causes of action of copyright and trademark infringement arising from the out-of-state tortious conduct it alleges.

The sufficiency of plaintiff's allegations as to the third element of § 302(a)(3) jurisdiction – that defendants' out-of-state tortious acts caused injury within New York – is less clear. Yash Raj, a New York corporation, argues that it has suffered financial harm in the form of lost sales or lost customers, and that harm has therefore occurred within New York. While some New York courts have endorsed plaintiff's position on the ground that "the torts of copyright infringement and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held," others have concluded that "the mere fact that the [copyright owner] resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction." Andy Stroud, Inc. v. Brown, No. 08 Civ. 8246(HB). 2009 WL 539863, at *6 (S.D.N.Y. Mar. 4, 2009) (noting split among district courts and citing cases). Perhaps in an effort to compensate for this uncertainty, plaintiff also asserts that harm has occurred in New York because plaintiff's "actual and potential customers in New York are confused or deceived when they encounter infringing copies of Plaintiff's Music, marks and

16

artwork on the Defendants' Web Site." Opp. Mem. at 15. In Citigroup, which plaintiff cites as authority, the court indeed found that the jurisdictional rule requiring harm in New York was "satisfied by [the plaintiff's] claim that its actual and potential customers in New York are confused or deceived when they view and interact with the [alleged infringer's] web sites." 97 F. Supp. 2d at 568. However, in that case, the plaintiff's allegations that it had customers in New York who had seen and been confused by defendants' website were not pure speculation, i.e., based on the facts that plaintiff had customers in New York and internet access to defendants' website was available in New York, but were supported by facts showing that the defendants had specifically targeted New York residents. See id.; see also NFL, 2000 WL 335566, at *2 (allegations that plaintiff had been injured in the New York market were supported by the fact that two NFL teams hail from the state). In any event, the Court need not decide the question of whether plaintiff has alleged facts to demonstrate harm in New York because, even assuming arguendo that it has, plaintiff plainly falls short of the fourth and fifth elements of the § 302(a)(3) test.

The standard for determining whether the foreseeability of harm in New York has been shown in the § 302(a)(3) context "is an objective rather than subjective one" and is intended to avoid conflicts with due process limits on the exercise of jurisdiction. Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999) (citation and internal quotations omitted). Accordingly, the Second Circuit requires "a discernible effort [by the defendant] to directly or indirectly serve the New York market." Id. (citation and internal quotations omitted). "Stated differently, the foreseeability requirement is not satisfied unless there are tangible manifestations showing that the nondomiciliary defendant either should have known where its product was destined or was

17

attempting to reach a New York market." Capitol Records, 611 F. Supp. 2d at 362 (citations and internal quotations omitted).

Yash Raj claims that defendants "actively market to advertisers and residents in New York" and therefore should have expected their infringing actions to have consequences here. Opp. Mem. at 14. In actuality, the facts alleged by plaintiff indicate that defendants pitch their website to an Asian Indian audience – to make the leap to New York, plaintiff again falls back on the (not terribly compelling) statistic that New York has the second largest state share of this ethnic population in the United States and that 25% of this national group residing in the United States live in the metropolitan New York area. Given this fact, plaintiff reasons that in establishing a website targeting Asian Indians, defendants had to recognize that the website would likely be visited on thousands of New York computer screens. Notwithstanding, the "simple likelihood . . . that a defendant's product will find its way into New York" does not constitute foreseeability of harm in the state for purposes of § 302(a)(3) – it "must be coupled with evidence of a purposeful New York affiliation." Kernan, 175 F.3d at 241 (emphasis added) (citations and quotations omitted). Yash Raj's argument, as a result, fails on the fourth prong, even though some of the ethereal wanderings of defendants' website in cyberspace surely must terminate in a landing on a computer screen in New York.

Additionally, as to the fifth and final element of plaintiff's required showing for jurisdiction under § 302(a)(3) – that defendants derive substantial revenue from interstate or international commerce – Yash Raj again misses the mark. Since there is no bright-line rule regarding when revenue becomes "substantial" for purposes of 302(a)(3)(ii), see Light v. Taylor, No. 05 Civ. 5003(WHP), 2007 WL 274798, at *4 (S.D.N.Y. Jan. 29, 2007); City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 417 (E.D.N.Y. 2007), courts must first assess

18

alternatively (1) the percentage of a party's overall revenue derived from interstate or foreign commerce, and (2) the absolute revenue generated by a defendant's interstate or international commercial activities. See Light, 2007 WL 274798, at *4. "Irrespective of the approach chosen, the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." Id. (citations and internal quotations omitted). In this case, the undisputed facts in the record indicate that www.dishant.com is not a profit-driven business venture for defendants. In apparent obeisance to the absence of commercial motivation on defendants' part, Yash Raj simply says that "[d]efendants do not contest that they derive income from interstate commerce." Indeed, Yash Raj does not even acknowledge in its pleadings or papers the jurisdictional requirement that such income be "substantial". Bluntly, Yash Raj neither pleads nor proves sufficient facts to support the fifth element of (a)(3) jurisdiction. See Cortland Line Co., Inc. v. Vincent, No. 98-CV-259, 1999 WL 305369, at *6 (N.D.N.Y. May 7, 1999) (holding that "[p]laintiff does not detail or offer evidence regarding the magnitude or source of defendants' interstate revenues . . . and its jurisdictional claim under § 302(a)(3)(ii) fails on this omission alone"); KIC Chemicals, Inc. v. ADCO Chemical Co., No. 95 CIV 6321, 1996 WL 122420, at *8 (S.D.N.Y. Mar. 20, 1996) (dismissing action for lack of jurisdiction based on plaintiff's failure to offer such evidence); see also Roberts-Gordon LLC v. Sup. Radiant Prods., Ltd., 85 F. Supp. 2d 202, 215-16 (W.D.N.Y. 2000) (absent any "hard evidence" indicating the amount of revenue generated by defendant from sales in New York, court conducting § 302(a)(3) analysis cannot determine whether such revenue "qualifies as substantial").

## C. Jurisdictional Discovery

Guarding against the conclusion that the Court has now drawn, i.e., that plaintiff's allegations are insufficient to support personal jurisdiction over defendants, plaintiff requests that the Court hold its decision in abeyance and permit it to conduct discovery of information relevant to jurisdiction. But "whatever speculations or hopes plaintiff may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery." Rosenberg v. PK Graphics, No. 03 Civ. 6655(NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) (citing Birmingham Fire Ins. Co. of Pa. v. KOA Fire & Marine Ins., 572 F. Supp. 2d 968, 972 (S.D.N.Y. 1983) (jurisdiction cannot be established by mere speculation)). While it is conceivable that discovery might reveal facts about other New York contacts, such an inquiry would nonetheless be futile because Yash Raj already concedes that all outreach to New York by defendants transpired via their website. Given the deficiencies in plaintiff's jurisdictional pleading and the uncontested facts regarding the operation of the website already in the record, jurisdictional discovery will not cure the fatal deficiencies. Indeed, if the mere possibility that a New Yorker can initiate a commercial transaction by interacting by computer with an internet website equally available everywhere on the planet is enough to trigger the ability of a court to force the principals maintaining the website to submit to jurisdictional discovery, then those conducting any business through such websites would be subject to jurisdictional discovery everywhere. Without showing more, this neither law nor the Constitution permits.

Lastly, there is absolutely no record evidence that indicates or even hints that any of the unidentified potential defendants, John Does 1-20, have ties to New York – indeed, other than

the named individual defendants, it appears that all of the participants in the operation of defendants' website are based in India.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the complaint pursuant to Rule 12(b)(2) is granted. Moreover, because plaintiff fails to make even a threshold showing of a basis for this Court's jurisdiction over the defendants in this action, plaintiff's request for jurisdictional discovery is denied.

SO ORDERED.

Dated: Brooklyn, New York
December 11, 2009

ERIC N. VITALIANO
United States District Judge